IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–01848–PAB–KMT

CLARENCE A. WALKER,

        Plaintiff,

v.

CHIEF, SPENCE,
CAPTAIN, BAY,
LIEUTENANT MARTIN,
SARGENT (sic) WISCAMB,
SARGEANT ASPINOL,
DEPUTY GOFF,
DEPUTY KILLIAM, and
DEPUTY SEXTON,

        Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

        This case involves claims that Defendants violated Plaintiff's First and Eighth

Amendment rights.  Plaintiff filed his Complaint on October 22, 2007, asserting claims against

eight defendants in their individual and official capacities.  ([Doc. No. 17] [hereinafter

"Compl."].)  This matter is before the court on "Defendants' Motion for Summary Judgment."

([Doc. No. 189] [filed April 17, 2009] [hereinafter "Mot."].)  Plaintiff did not file a Response.

Jurisdiction is premised upon 42 U.S.C. § 1983 (2007).  This motion is ripe for review and recommendation.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Prisoner Complaint, the Motion for Summary Judgment, and the file.  Plaintiff is an inmate confined in the Arapahoe County Detention Facility (hereinafter "ACDF").  (Mot. at 1.)  Plaintiff has been housed in administrative segregation since January 14, 2007.  (*Id.* at 5.)  On May 14, 2007, Plaintiff filed suit against two of the ACDF's medical professionals for alleged failures to provide medical care.  (*Id.*; Compl. at 7; *see Walker v. Meyer*, No. 07-cv-01000-WDM-KMT, 2008 WL 178472 (D. Colo. Jan. 17, 2008).)  In Claim One, Plaintiff alleges that eight individual defendants retaliated against him for filing *Walker v. Meyer*.  (Compl. at 6–10.)

### 1.    *Supervisory Defendants*

During the time relevant to this litigation, Defendant Phil Spence (hereinafter "Spence") served as the Bureau Chief of the Detention and Administrative Services Bureau of the Arapahoe County Sheriff's Office.  (Mot., Aff. of Bureau Chief Phil Spence, ¶ 1.)  His responsibilities included management and operation of the Arapahoe County Jail.  (*Id.*)  Plaintiff claims that on September 6, 2007 he notified Defendant Spence that unnamed deputies had threatened his life and harassed him by denying him toiletries, revoking his "hour out"[1] several times, interfering with his medications, hindering his access to the law library, threatening to use a taser on him,

---

[1] As an inmate in administrative segregation, Plaintiff receives one hour outside of his cell per day for exercise.  (Mot. at 5.)

and threatening to poison his food.  (Compl. at 6.)  Plaintiff states that he met with Defendant

Spence regarding these allegations and informed him that he feared for his safety.  (*Id.*)  Plaintiff

maintains that, in response, Defendant Spence said he did not believe Plaintiff's allegations and

that he "better stop filing suits against the jail before something [happens] that [Plaintiff would]

be sorry for."  (*Id.*)  Plaintiff claims he was "denied any type of relief . . . because of litigating."

(*Id.*)  Plaintiff asserts that Defendant Spence's failure to provide relief constituted gross

negligence in managing the people he supervised, as well as deliberate indifference to his safety,

in violation of his Eighth Amendment rights.  (*Id.*)

      During Plaintiff's incarceration, Defendant Tom Bay (hereinafter "Bay") served in the

Arapahoe County Detention Facility as Captain for Detention Operations within the Detentions

and Administrative Services Bureau.  (Mot., Aff. of Tom Bay, ¶ 1.)  Defendant Bay's

responsibilities included the overall day-to-day supervision of most of the Detention Facility's

staff and operations.  (*Id.*)  Plaintiff claims he notified Defendant Bay "numerous times" that he

was being harassed and threatened by deputies, and that he feared for his safety.  (Compl. at 7.)

Plaintiff states that Defendant Bay refused to meet with him concerning these allegations and

denied "any type of relief" that Plaintiff requested on several occasions.  (*Id.*)  Consequently,

Plaintiff asserts that Defendant Bay was grossly negligent in managing the people he supervised.

(*Id.*)  Plaintiff also claims Defendant Bay's refusal to "take [Plaintiff] out of a serious problem"

constituted deliberate indifference, in violation of his Eighth Amendment rights.  (*Id.*)

      During the relevant time period, Defendant Gary Martin (hereinafter "Martin") served in

the Arapahoe County Detention Facility as the day-shift Watch Commander within the

Detentions and Administrative Services Bureau, with responsibility for overseeing staff and operations within the Detention Facility's housing pods.  (Mot., Aff. of Gary Martin, ¶ 1.) Plaintiff claims he complained to Defendant Martin "numerous times" regarding a deputy that had "committed a battery against [him] several times."  (Compl. at 7.)  Specifically, Plaintiff complained regarding Sargeant Wiscamb's refusal to investigate Plaintiff's allegations that he was assaulted by Deputy Kilian.  (Inmate Request Form, Doc. No. 189-27.)  Plaintiff states that Defendant Martin never met with him after being notified of these allegations and that he "failed to do anything to fix the problem."  (Compl. at 7.)  Consequently, Plaintiff claims Defendant Martin was grossly negligent in managing the people he supervised.  (*Id.*)  Plaintiff also claims Defendant Martin's failure to act in response to his complaints violated Plaintiff's Eighth Amendment rights.  (*Id.*)

During the time period relevant to this litigation, Defendant Darby Wiscamb (hereinafter "Wiscamb") was a Sergeant in the Arapahoe County Detention Facility whose responsibilities include supervision of deputies working in the jail's housing pods.[2]  (Aff. of Sgt. Darby Wiscamb, ¶ 1.)  Plaintiff claims he met with Defendant Wiscamb on May 20, 2007 regarding a deputy that had been harassing him, had "committed a battery on [him]," and had threatened to "taze [him] to death." (Compl. at 8.)  Plaintiff states he expressed his intention to file charges against the deputy for battery.  (*Id.*)  Plaintiff maintains that, in response, Defendant Wiscamb

---

[2] The Affidavit of Sgt. Darby Wiscamb ([Doc. No. 113-25] [filed April 28, 2008]) was submitted as part of Defendants' Response to Plaintiff's Motion for Emergency Preliminary Injunction ([Doc. No. 100] [filed April 10, 2008]).

said that she would not allow Plaintiff to file charges, nor would she investigate, file charges, or move the deputy from Plaintiff's area.  (*Id.*)  Plaintiff claims Defendant Wiscamb's conduct constituted gross negligence in managing the people she supervised.  (*Id.*)  Plaintiff claims Defendant Wiscamb was deliberately indifferent to Plaintiff's health and safety, in violation of his Eighth Amendment rights.  (*Id.*)

During Plaintiff's incarceration, Defendant Richard Aspinall (hereinafter "Aspinall") served as a Shift Supervisor in the housing pods within the Arapahoe County Detention Facility. (Mot., Aff. of Sgt. Richard Aspinall, ¶ 1.)  Plaintiff claims he met with Defendant Aspinall on June 5, 2007 regarding deputies threatening and harassing him.  (Compl. at 8.)  Without further context, Plaintiff claims Defendant Aspinall told him not to write to him again concerning such allegations and that "he and some buddies [were] going to police [him]."[3]  (*Id.*)  Plaintiff states Defendant Aspinall "failed to do anything to fix the situation" about which he complained.  (*Id.*) Consequently, Plaintiff maintains that Defendant Aspinall was grossly negligent in managing the people he supervised, as well as deliberately indifferent to Plaintiff's complaints, in violation of his Eighth Amendment rights.  (*Id.*)

## 2. *Non-Supervisory Defendants*

During the relevant time period, Defendant Marian Goff (hereinafter "Goff ") served as a Deputy Sheriff in the Detention and Administrative Services Bureau of the Arapahoe County

---

[3] Plaintiff has not explained the consequences such a threat implies.

Detention Facility.[4]  (Aff. of Deputy Marian Goff, ¶ 1.)  Defendant Goff's responsibilities

included the supervision of inmates within the various jail housing pods.  (*Id.*)  Plaintiff claims

that on or about August 10, 2007, he informed Defendant Goff that he was suing her for

"continuous harassment and threats."  (*Id.*)  Plaintiff maintains that in response, Defendant Goff

stated that she was going to have Plaintiff's legs broken, had him placed in "the hole" for 70

days, and issued five disciplinary reports against him on August 11, 2007.  (*Id.*)  Plaintiff asserts

that Defendant Goff's actions constituted deliberate indifference to his health and safety, in

violation of his Eighth Amendment rights.  (*Id.*)

 During the time period relevant to this litigation, Defendant Lynn Kilian (hereinafter

"Kilian") served as a Deputy Sheriff within the Arapahoe County Detention Facility.[5]  (Aff. of

Deputy Lynn Kilian, ¶ 1.)  Defendant Kilian's responsibilities included the supervision of

inmates within the various jail housing pods.  (*Id.*)  Plaintiff claims Defendant Kilian has

continuously harassed him.  (Compl. at 10.)  Plaintiff states Defendant Kilian has yelled racial

slurs at him over the intercom and has taken his "hour out" at least once.  (*Id.*)  Plaintiff

maintains that Defendant Kilian has threatened to physically harm him on several occasions,

including threatening to "taze [Plaintiff] to death" if he did not stop filing lawsuits.  (*Id.*)

---

[4] The Affidavit of Deputy Marian Goff ([Doc. No. 113-22] [filed April 28, 2008]) was submitted as part of Defendants' Response to Plaintiff's Motion for Emergency Preliminary Injunction ([Doc. No. 100] [filed April 10, 2008]).

[5] The Affidavit of Deputy Lynn Kilian ([Doc. No. 113-24] [filed April 28, 2008]) was submitted as part of Defendants' Response to Plaintiff's Motion for Emergency Preliminary Injunction ([Doc. No. 100] [filed April 10, 2008]).

Plaintiff claims Defendant Kilian beat on his cell door twice and placed him in "the hole" on the basis of "bogus reports." (*Id.*) Plaintiff asserts that Defendant Kilian was deliberately indifferent to his safety, in violation of his Eighth Amendment rights. (*Id.*)

During Plaintiff's incarceration, Defendant Christopher Sexton (hereinafter "Sexton") served as a Deputy Sheriff within the Arapahoe County Detention Facility.[6] (Aff. of Deputy Christopher Sexton, ¶ 1.) Defendant Sexton's responsibilities included the supervision of inmates within the various jail housing pods. (*Id.*) Plaintiff claims Defendant Sexton has revoked his "hour out" several times. (Compl. at 10.) Plaintiff states that Defendant Sexton told a nurse not to give Plaintiff his medications. (*Id.*) Plaintiff alleges that Defendant Sexton has threatened to "taze [him] to death," and has spread a rumor among inmates that Plaintiff is a child molester. (*Id.*) Plaintiff claims Defendant Sexton has threatened that "something bad is . . . going to happen to [Plaintiff]" if he does not put an end to his suit. (*Id.*) Plaintiff maintains that Defendant Sexton was deliberately indifferent to his health and safety, in violation of his Eighth Amendment rights. (*Id.*)

In Claim Two, Plaintiff alleges the eight named defendants conspired to violate his rights in retaliation for filing *Walker v. Meyer*. (Compl. at 11.) Plaintiff states that all defendants knew of his prior lawsuit against officials at the facility and his complaints of retaliation but refused to

---

[6] The Affidavit of Deputy Christopher Sexton ([Doc. No. 113-23] [filed April 28, 2008]) was submitted as part of Defendants' Response to Plaintiff's Motion for Emergency Preliminary Injunction ([Doc. No. 100] [filed April 10, 2008]).

remedy them.  (*Id*.)  Plaintiff alleges that all defendants "conspired" to refuse to address his

complaints, and to threaten and harass him "because of the suit," in violation of his rights.[7]  (*Id*.)

Plaintiff seeks punitive and compensatory damages in an amount of $500,000 from each

named defendant.  (*Id*. at 14–15.)  Plaintiff also seeks a preliminary injunction against each

defendant.  (*Id*.)  Defendants, attaching numerous exhibits to their motion, seek dismissal of

Plaintiff's claims on the following grounds: 1) there are no genuine issues as to any material fact;

2) Plaintiff's claims fail to state a cognizable cause of action; and 3) each Defendant is entitled to

qualified immunity.  (Mot.)

**STANDARD OF REVIEW**

*1.*       **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

---

[7] Plaintiff claims the alleged conspiracy violated his Eighth Amendment rights. However, reviewing the Complaint liberally, as it must under *Trackwell v. United States*, 472 F.3d at 1243, the court finds that Plaintiff's claim is more accurately construed as one for a violation of his First Amendment rights.  *See Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights") (citation omitted)).

8

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## 2.   *Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ.

P. 56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th

Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment

motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The factual record and reasonable inferences therefrom are viewed in the light most favorable to

the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th

Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### I.      *Eighth Amendment Claims*

The court notes that while referencing "retaliation" throughout the Complaint, Plaintiff

consistently couches his claims as violations of his Eighth Amendment rights.   Defendants,

however, have addressed Plaintiff's claims as falling only within the rights protected by the First

Amendment.  (Mot. at 8.)  Reviewing the Complaint liberally, *Trackwell v. United States*, 472

F.3d at 1243, it is apparent that the overarching theme within which Plaintiff's factual allegations

fall is that of retaliation for filing a previous suit or for filing grievances.[8]  *See Smith v.*

---

[8] In the Complaint, Plaintiff describes the "Nature of the Case" as "civil rights violations
. . . for harassment, threats, retaliation, because of another civil action, that I am litigating . . .
[and that] it is my constitutional right to be free from retaliation based on my legal activity."
(Compl. at 5.)  Plaintiff entitles Claim One as "Campaign of Harassment/Retaliation."  (Compl.

*Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (citing *Wildberger v. Bracknell*, 869 F.2d 1467,

1468 (11th Cir. 1989) (retaliation for filing lawsuits and administrative grievances "violates both

the inmate's right of access to the courts and the inmate's First Amendment rights") (citation

omitted)).  Therefore, to the extent Plaintiff may have alleged Eighth Amendment violations in

some form, the court addresses those claims *sua sponte*.

The Eighth Amendment requires that prison officials "provide humane conditions of

confinement" for prisoners, including "reasonable measures to guarantee the safety of inmates."

*Giron v. Corr. Corp. of America*, 191 F.2d 1281, 1285 (10th Cir. 2005) *quoting Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994).  In the Tenth Circuit, the analysis of what is reasonable is

tempered by the fact that "[p]risons are necessarily dangerous places; they house society's most

antisocial and violent people in close proximity to each other."  *Gonzalez v. Martinez*, 403 F.3d

1179, 1186 (10th Cir. 2005) *quoting Farmer*, 511 U.S. at 858 (Thomas, J., dissenting).

Plaintiff alleges in the Complaint that, by virtue of the supervisory defendants' deliberate

indifference to the alleged ongoing retaliatory actions of the deputies, the supervisory defendants

were deliberately indifferent to his plight.  However, vicarious liability is inapplicable to section

1983 suits and Plaintiff has failed to allege the supervisory defendants' personal participation in

any alleged misconduct.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009)

("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

at 6.)

Constitution."); *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)

("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or

her; when the defendant did it; how the defendant's action harmed him or her, and what specific

legal right the plaintiff believes the defendant violated.").  Moreover, to the extent Plaintiff

claims the threats and harassment allegedly committed against him by the non-supervisory

defendants violated his Eighth Amendment rights, he fails to state a claim because "acts or

omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts

do not violate the Eighth Amendment." *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir.

2001). [9]

## II.     *First Amendment Retaliation Claims*

Access to courts is a fundamental right protected by the Constitution, including the First

Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*,

762 F.2d 851, 853 (10th Cir. 1985).  "Prison officials may not retaliate against or harass an

inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*,

899 F.2d 940, 947 (10th Cir. 1990).  "This principle applies even where the action taken in

retaliation would be otherwise permissible." *Id.* at 948.  However, a prisoner is "not inoculated

from the normal conditions of confinement experienced by convicted felons serving time in

prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d

---

[9] To the extent Plaintiff seeks to hold any named Defendant liable for gross negligence in Claim One, he fails to state a cognizable section 1983 claim. *See Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999) (gross negligence does not satisfy scienter requirement for viable § 1983 claim).

1140, 1144 (10th Cir. 1998).  "[I]n order to establish a First Amendment retaliation claim, a

prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an

adverse action; and (3) that a causal connection exists between the protected conduct and the

adverse action."  *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839, at *7 (D.

Colo. Jan. 31, 2008) (unpublished decision) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th

Cir. 2004)).  "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather

allege specific facts showing retaliation because of the exercise of the prisoner's constitutional

rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). *See also Jones v. Greninger,*

188 F.3d 322, 325 (5th Cir. 1999) ("Mere conclusionary [sic] allegations of retaliation will not

be enough to withstand a proper motion for dismissal of the claim") (citation omitted).  The

plaintiff must prove that "but for" the retaliatory motive, the adverse response would not have

taken place.  *Peterson*, 149 F.3d at 1144 (citations omitted).  "The inmate must allege more than

his personal belief that he is the victim of retaliation."  *Jones*, 188 F.3d at 325.  The prisoner

must "allege a chronology of events from which retaliation may plausibly be inferred."  *Id.*

(citation omitted).

### A.    *Supervisory Defendants*

Plaintiff claims that Defendants Spence, Bay, Martin, Wiscamb and Aspinall refused to

take action in response to his complaints in retaliation for filing *Walker v. Meyer*.  Filing a

lawsuit constitutes protected conduct.  *See Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir.

1990) (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (retaliation for

filing lawsuits and administrative grievances "violates both the inmate's right of access to the

courts and the inmate's First Amendment rights") (citation omitted)).  However, Plaintiff has failed to allege in his Complaint or to respond with specific facts or a chronology of events from which a causal connection may plausibly be inferred between this protected conduct and the adverse actions allegedly inflicted by Defendant Spence, Bay, Martin, Wiscamb and Aspinall. Indeed, according to sworn affidavits, Defendants Spence, Martin and Wiscamb became aware of Plaintiff's prior lawsuit after they had been sued in the present action.  (Mot., Aff. of Bureau Chief Phil Spence, ¶ 9; Mot., Aff. of Gary Martin, ¶ 7; Aff. of Sgt. Darby Wiscamb, ¶ 3.) "[P]roof of retaliation . . . presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 668–69 (7th Cir. 2006).  *See Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *10 (D. Colo. May 27, 2008).

Moreover, Plaintiff has failed to allege sufficient factual matter to show that "but for" the retaliatory motive, the adverse response would not have taken place.  *Peterson*, 149 F.3d at 1144. Based on temporal proximity, it appears the supervisory Defendants' refusal to provide Plaintiff relief was a consequence of investigations which had revealed his complaints to be without merit.  Defendant Spence conducted at least two investigations into Plaintiff's complaints and responded in writing that he "was unable to discover any evidence" to substantiate Plaintiff's charges.  (Mot., Aff. of Bureau Chief Phil Spence, ¶¶ 2, 4, 8; *see* Inmate Request Forms, Doc. Nos. 189-10–15.)  The Sheriff's Office of Professional Standards, also known as Internal Affairs, also conducted an independent investigation related to allegations of battery and harassment by

14

Defendants Kilian and Goff.  (*Id.*)  That investigation also concluded there was  "no evidence" to support Plaintiff's accusations.  (*Id.*)

Defendant Bay investigated at least three grievances filed by Plaintiff concerning harassment and threats by deputies.  (Inmate Request Forms, Doc. Nos. 189-18–189-20; *see* Mot., Aff. of Tom Bay.)  Defendant Bay responded to each in writing, explaining why he had found each to be without merit.  (*Id.*)  Defendant Bay even requested that Plaintiff provide a list of witnesses to substantiate his claims (Inmate Request Form, Doc. No. 189-22), which Plaintiff refused to do (Inmate Request Form, Doc. No. 189-23).  Defendant Bay states that "Plaintiff's refusal to provide . . . witnesses who could corroborate his claims, and the information provided to [Defendant Bay] by the shift commanders who had contact with Plaintiff and had conducted their own reviews into Plaintiff's allegations, [led Defendant Bay to] determine[] that Plaintiff's claims of misconduct against various deputies and other officers were without factual merit." (Mot., Aff. of Tom Bay, ¶ 10.)

Defendant Martin responded to three grievances concerning harassment and threats filed by Plaintiff.  (Mot., Aff. of Gary Martin, ¶¶ 3–5.)  On May 21, 2007, Defendant Martin responded to Plaintiff's first grievance informing him that his complaint regarding an assault by Deputy Kilian had been referred for investigation to the Office of Professional Standards according to standard practice.  (Inmate Request Form, Doc. No. 189-26;  Mot., Aff. of Gary Martin, ¶ 3.)  On June 19, 2007, Defendant Martin responded to Plaintiff's third grievance informing him that the investigation by the Office of Professional Standards into his allegations

had found no fault on the part of Defendant Kilian.  (Inmate Request Form, Doc. No. 189-27;

Mot., Aff. of Gary Martin, ¶ 5.)

Defendant Wiscamb states that she "had personal meetings and conversations with

[Plaintiff] concerning . . . his complaints against deputies under [her] supervision," and that she

"never found [Plaintiff's] complaints . . . to be meritorious or factual."  (Aff. of Sgt. Darby

Wiscamb, ¶ 2.)   Defendant Aspinall, too, states that he "never found evidence" of deputies

harassing Plaintiff.  (Mot., Aff. of Sgt. Richard Aspinall, ¶ 2.)  Defendant Aspinall further states

that he "checked with staff" regarding Plaintiff's complaint concerning denial of personal

hygiene items and found that there had been no such denial.  (*Id.*)  Moreover, after investigating

Plaintiff's June 19, 2007 grievance concerning retaliatory harassment by Deputy Goff,

Defendant Aspinall responded to Plaintiff in writing indicating that he had found Plaintiff's

claims to be "unfounded."  (*Id.*, ¶ 3; Inmate Request Form, Doc. No. 189-29.)

Plaintiff has failed to show that "but for" the retaliatory motive, any supervisory

defendant would have provided him relief in response to his complaints.  The court finds that

Defendants have shown an absence of evidence to support Plaintiff's allegations that a causal

connection existed between his protected conduct and the alleged "adverse actions."  There is an

absence of evidence to support Plaintiff's allegation that he suffered adverse action at all in light

of the numerous investigations conducted into his complaints.  The court finds that Plaintiff has

failed to demonstrate that a genuine disputed material issue exists for trial.  Accordingly, the

court recommends that Defendants Spence, Bay, Martin, Wiscamb and Aspinall be dismissed in

all capacities as to Claim One.

16

### B.    Non-Supervisory Defendants

Plaintiff alleges that Defendant Goff filed disciplinary reports and placed him in "the hole" in retaliation for expressing his intention to sue her.  Even if Plaintiff's mere statement that he intended to sue constituted protected conduct, Plaintiff has failed to allege sufficient factual allegations to show that "but for" the retaliatory motive, Defendant Goff would not have taken disciplinary action against Plaintiff.  *See Peterson*, 149 F.3d at 1144.  The uncontested evidence shows that Defendant Goff filed disciplinary reports leading to Plaintiff's placement in disciplinary lockdown because Plaintiff violated jail rules.

Defendant Goff's affidavit states that she took disciplinary action against Plaintiff on August 10, 2007 in response to Plaintiff's "threatening and intimidating behavior directed . . . against other inmates and staff, including [herself], [his] abusive and profane language, refus[al] to obey orders, interfer[ence] with the duties of a deputy, lying to staff, concealing medication, and disorderly conduct."  (Aff. of Deputy Marian Goff, ¶ 4.)  Specifically, when ordered to take his medications, Plaintiff refused stating, "I don't take meds from (expletive) women" and then threatened to harm Defendant Goff.  (Notification of Disciplinary Findings[10], Doc. No. 113-11 at 2–4.)  Moreover, Defendant Goff states that she did not have the authority to place Plaintiff in "the hole."  (Aff. of Deputy Marian Goff, ¶ 4.)  Rather, Plaintiff was sentenced to "disciplinary housing" after a hearing on August 14, 2007 concerning his August 10, 2007 disciplinary

---

[10]  The August 14, 2007 "Notification of Disciplinary Findings" ([Doc. No. 113-11] [filed April 28, 2008]) was submitted as part of Defendants' Response to Plaintiff's Motion for Emergency Preliminary Injunction ([Doc. No. 100] [filed April 10, 2008]).

infractions reported by Defendant Goff.  (Notification of Disciplinary Findings, Doc. No. 113-11.)  Plaintiff has failed to show that "but for" a retaliatory motive, Defendant Goff would not have filed the disciplinary report that ultimately led to his placement in "the hole."

Defendant Goff denies ever having threatened to have Plaintiff's legs broken or having harassed him in any way.  (Aff. of Deputy Marian Goff, ¶¶ 5–7.)  Although a factual dispute, this dispute is not material in this context because, "verbal harassment, threats, or taunts do not rise to the level of retaliation."  *Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *10 (D. Colo. May 27, 2008) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [sheriff threatened to hang prisoner] is not sufficient to state a constitutional deprivation under 42 U.S..C. § 1983."); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037–38 (10th Cir. 1995) (harsh, even threatening language does not amount to a constitutional violation); *Abeyta By and Through Martinez v. Chama Valley Independent School Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse is insufficient to establish a constitutional violation"); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) (verbal threats and harassment "are necessarily excluded from the cruel and unusual punishment inquiry")).  Therefore, there remains no factual dispute to preclude summary judgment on this issue.  Plaintiff has not alleged and there is no evidence to suggest that, even if a threat had been made, action ever materialized.  Based on the undisputed evidence, Defendant Goff is entitled to judgment as a matter of law

Plaintiff claims that Defendant Kilian harassed and threatened him in retaliation for filing *Walker v. Meyer*.  Defendant Kilian, through his affidavit, states that he did not become aware of Plaintiff's prior lawsuit until after he had been sued in the present action.  (Aff. of Deputy Lynn Kilian, ¶ 5.)  The Plaintiff alleges no facts contrary to this assertion.  Defendant Kilian could not have retaliated against Plaintiff on the basis of information he did not have.

Further,  just like Defendant Goff, Defendant Kilian denies ever having threatened or harassed Plaintiff (*Id.* at ¶¶ 5–7), and there is no allegation that any such threats actually materialized.  Once again, threats or harassment do not constitute retaliation.  *Teague*, 2008 WL 2228905, at *10.

 Plaintiff further claims that Defendant Kilian placed him in "the hole" in retaliation for filing suit.  However, Plaintiff has failed to allege sufficient factual matter to show that "but for" the retaliatory motive, Defendant Kilian would not have taken such disciplinary action against him.  *See Peterson*, 149 F.3d at 1144.  To the contrary, the undisputed evidence indicates that Plaintiff's "hour out" was revoked on July 6, 2007 in response to Plaintiff's verbal abuse.  (Computer POD log entry, Doc. No. 189-3 at 1; *see also* Mot., Aff. of Deputy Susan Kraus, ¶ 6.)  Defendant Kilian filed another disciplinary report against Plaintiff on November 21, 2007 for disruptive behavior.  (Aff. of Deputy Lynn Kilian , ¶ 4.)  Defendant Kilian asserts, and Plaintiff does not dispute, that Kilian does not have the authority to place an inmate such as Plaintiff in disciplinary lockdown housing.  (Aff. of Deputy Lynn Kilian, ¶ 4.)  It was only subsequent to Plaintiff receiving written notice and a hearing concerning the November 21st disciplinary report that he was ultimately placed in disciplinary lockdown for eleven days.  (*Id.*)

The court finds that Plaintiff has failed to show any disputed fact suggesting that "but for" a retaliatory motive, Defendant Kilian would not have filed disciplinary reports against him that ultimately led to his placement in "the hole."

Plaintiff claims Defendant Sexton revoked his "hour out," told a nurse not to give him medications, threatened and spread a rumors about him in retaliation for filing *Walker v. Meyer*. (Compl. at 10.)  Once again, however, Defendant Sexton's sworn undisputed affidavit states that he learned that Plaintiff had sued others at the jail after he was sued in the present action.  (Aff. of Deputy Christopher Sexton, ¶ 5.)  Moreover, Defendant Sexton denies having ever harassed or threatened Plaintiff, and there is no factual allegation that any such threats were carried out (*id*., ¶¶ 6–8), and as stated *supra*, threats and harassment do not constitute retaliation.  *Teague*, 2008 WL 2228905, at *10.  Finally, Plaintiff fails to dispute Defendant Sexton's assertion that she has never taken disciplinary action against him.  (*Id*., ¶ 5)  Rather, the undisputed record shows that on September 9, 2007, Deputy Sue Kraus, finding that Plaintiff's verbal abuse of Defendant Sexton was a security threat, terminated Plaintiff's "hour out."  (Computer POD log entry, Doc. No. 189-5; *see also* Mot., Aff. of Deputy Susan Kraus, ¶ 6.)

The court finds that Defendants have shown an absence of evidence to support Plaintiff's allegations that a causal connection existed between his protected conduct and the actions taken against him by Defendants Goff, Kilian or Sexton.  The court further finds that, having failed to file a Response, Plaintiff has failed to demonstrate that a genuine material dispute exists for trial. Accordingly, the court recommends that Defendants Goff, Kilian and Sexton be dismissed in all capacities as to Plaintiff's Claim One.

### III.    Conspiracy Claim

A claim of conspiracy requires plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants.  *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994).  "[C]onspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds."  *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 154 (1970)). "[C]onclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient."  *Id.* (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998) (Miller, J.)).  Obviously, in this case, the meeting of the minds required is that the Defendants agreed together to retaliate against the Plaintiff for his filing of lawsuits and grievances.

Plaintiff has wholly failed to allege facts sufficient to suggest the existence of a meeting of the minds or an agreement among the defendants.  Plaintiff's conclusory allegations concerning the existence of a conspiracy are without factual support in the Complaint or in the other documents presented on this motion for summary judgment.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949–51 (2009) ("allegations in the complaint that are not entitled to the assumption of truth," are those allegations which are legal conclusion, bare assertions, or merely conclusory.)  Plaintiff did not file a Response to the Defendants' dispositive motion and did not counter in any manner the affidavits or other evidence presented in support thereof. Therefore, the court finds that Defendants have shown an absence of evidence to support Plaintiff's claim that Defendants conspired to violate his constitutional rights.  The court also

21

finds that, having failed to file a Response, Plaintiff has failed to demonstrate that a genuine

issue of material fact exists for trial.  Accordingly, the court recommends that all defendants be

dismissed in all capacities as to Plaintiff's Claim Two.

**IV.     Request for Preliminary Injunction**

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief

is clearly established.  *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on

the movant to establish his right to the relief requested.  *Penn v. San Juan Hospital, Inc.*, 528

F.2d 1181, 1185 (10th Cir. 1975).  To obtain a preliminary injunction under Rule 65(a), the

plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the

threatened injury to the moving party outweighs whatever damage the proposed injunction may

cause the opposing party; (3) the injunction, if issued, would not be adverse to the public

interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on

the merits.  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).  The plaintiff's right to relief

must be clear and unequivocal.  *Penn*, 528 F.2d at 1185.

Although not set forth with clarity, Plaintiff apparently requests the court enjoin the

Defendants from continuing their allegedly harassing and threatening activities.  (Compl. at 11.)

However, Plaintiff has failed to allege facts that demonstrate that he will suffer irreparable injury

if no preliminary injunction is entered in this action.  More importantly, in light of the court's

findings above, there is not a substantial likelihood that Plaintiff will prevail on the merits of his

claims.  Therefore, the court recommends that Plaintiff's request for a preliminary injunction be

denied.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion for Summary Judgment" (Doc. No. 189) be

**GRANTED**, and that Summary Judgment be entered in favor of Defendants, and that this case

be dismissed in its entirety with prejudice.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the District Court on notice of the basis for the objection will not preserve the

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review."  *United States v. One Parcel of Real Property Known As*

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of August, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge